TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER P. ROBBINS (Cal. Bar No. 251845)
Deputy Chief, Criminal Appeals Section
Assistant United States Attorney
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2400
E-mail: alexander.p.robbins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAIME HECTOR RAMIREZ,<br>Defendant. | No. 5:25-cr-264-SSS |
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>TU ANH TRAN, et al.<br>Defendant. | No. 8:25-cr-250-JVS-1 |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' RENEWED MOTIONS TO DISMISS**

The United States of America hereby submits this consolidated response in opposition to defendants' renewed motions ("Renewed Mot.," *Ramirez* Dkt. 68; *see also* *Tran* Dkt. 60) to dismiss the charges against them and to disqualify Bilal Essayli from working on their cases in any capacity. The motions have been referred to Judge

Michael Seabright of the District of Hawaii, as required by the orders of Chief Circuit Judge Murguia and Chief District Judge Gee.*

The government's opposition is based on the attached memorandum, the attached exhibits, the files and records in these cases, and any other evidence that the Court may consider. The government further relies on its previously filed opposition and attached exhibits ("Gov't Opp.," *Ramirez* Dkt. 33), its supplemental memorandum regarding remedies ("Gov't Supp.," *Ramirez* Dkt. 50), its oral argument before the Court ("Tr.," *Ramirez* Dkt. 47), its opposition to defendants' motion for reconsideration (Gov't Reconsider Opp. 5, *Ramirez* Dkt. 59), and its notice of new authority (Gov't Notice re *Jackson*, *Ramirez* Dkt. 66).

Dated: Sept. 23, 2026

Respectfully submitted,

*/s/ Alexander P. Robbins*

ALEXANDER P. ROBBINS
Assistant United States Attorney
Attorney for Plaintiff
UNITED STATES OF AMERICA

---

* *See* Order of the Chief Judge 25-126, U.S. District Court for the Central District of California (Sept. 8, 2025), *Ramirez* Dkt. 25 ("all district judges of the United States District Court for the Central District of California shall be recused from hearing motions concerning the disqualification of Acting United States Attorney Bilal A. Essayli," and "all motions concerning the disqualification of Acting United States Attorney Bilal A. Essayli shall be transferred to the Honorable J. Michael Seabright of the United States District Court for the District of Hawaii in accordance with the Honorable Mary H. Murguia's designation order"); *see also* Order of the Chief Judge 26-34, U.S. District Court for the Central District of California (June 24, 2026), *Ramirez* Dkt. 70, *Tran* Dkt. 48 (same); *see also* 28 U.S.C. § 455(a).

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. PROCEDURAL HISTORY ..... 1

A. Essayli's Appointment, *Ramirez*, and Follow-on Litigation ..... 1

B. Decisions Around the Country ..... 4

C. The Ninth Circuit's Decision in *Jackson* ..... 6

D. The Government Seeks Supreme Court Review and Stays of Lower Court Decisions That Could Jeopardize Federal Law Enforcement ..... 8

E. The Attorney General Issues Essayli a Revised Delegation Order to Comply with *Jackson* and Clarify the Limits of His Authority as a FAUSA and Member of the U.S. Attorney's Office ..... 10

III. ARGUMENT ..... 11

A. Defendants' Accusations of Bad Faith Are Meritless ..... 11

B. Essayli Is Allowed to Conduct and Supervise Litigation in the Central District ..... 13

1. The government's position. ..... 14

2. Defendants' arguments are meritless. ..... 17

3. Defendants' real objection is to Essayli being the highest-ranking attorney in the office—which is a political argument, not a legal one. ..... 20

C. Any Extension of *Jackson* Should At Least Be Stayed or Held in Abeyance Pending the Supreme Court's Review of That Case ..... 21

IV. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

## CASES

*Bullock v. BLM*,
489 F. Supp. 3d 1112 (D. Mont. 2020) .......... 18, 19

*In re Grand Jury Subpoenas to the Office of the New York State Att'y Gen.*,
814 F. Supp. 3d 284 (N.D.N.Y. Jan. 8, 2026) .......... 5, 8

*In re Grand Jury Subpoenas to the Office of the New York State Att'y Gen.*,
—F.4th—, 2026 WL 2450485 (2d Cir. Aug. 21, 2026) .......... 8, 19

*In re Zermeno-Gomez*,
868 F.3d 1048 (9th Cir. 2017) .......... 8

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 22

*Russo v. Sec'y of Commerce*,
—F.4th—, 2026 WL 2602668 (11th Cir. Sept. 3, 2026) .......... 18

*Southwest General v. NLRB*,
796 F.3d 67 (D.C. Cir. 2015) .......... 20

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .......... 22

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) .......... 22

*United States v. Comey*,
810 F. Supp. 3d 768 (E.D. Va. 2025) .......... 5

*United States v. Gantt*,
194 F.3d 987 (9th Cir. 1999) .......... 11

*United States v. Garcia*,
2025 WL 2784640 (D. Nev. Sept. 30, 2025) .......... 5, 6, 7

*United States v. Garcia*,
2025 WL 2985284 (D. Nev. Oct. 23, 2025) .......... 7

*United States v. Giraud*,
795 F. Supp. 3d 560 (D.N.J. Aug. 21, 2025) .......... 5

*United States v. Jackson*,
—F.4th—, 2026 WL 2387099 (9th Cir. Aug. 17, 2026) .......... passim

*United States v. James*,
810 F. Supp. 3d 752 (E.D. Va. 2025) .......... 5

*United States v. Naviwala*,
825 F. Supp. 3d 451 (D.N.J. 2026) .......... 6

*United States v. Nixon*,
418 U.S. 683 (1974) ... 4

*United States v. Ramirez*,
807 F. Supp. 3d 1086 (C.D. Cal. Oct. 28, 2025) ... passim

*United States v. Ramirez*,
812 F. Supp. 3d 1011 (C.D. Cal. Dec. 12, 2025) ... passim

*United States v. Ramirez-Martinez*,
2026 WL 113431 (D.N.M. Jan. 14, 2026) ... 5, 6, 11

*United States v. Rutherford*,
442 U.S. 544 (1979) ... 18

**STATUTES**

5 U.S.C. § 3345(a)(1) ... passim

5 U.S.C. § 3346 ... 2, 14

5 U.S.C. § 3347 ... 7

5 U.S.C. § 3349 ... 2

18 U.S.C. § 3731 ... 4, 11

18 U.S.C. § 5032 ... 11

26 U.S.C. § 6103 ... 11

28 U.S.C. § 509 ... 2, 10

28 U.S.C. § 510 ... 2, 10

28 U.S.C. § 515 ... 2, 4

28 U.S.C. § 542 ... 10, 13

28 U.S.C. § 543 ... 10

28 U.S.C. § 546 ... 2, 6

**REGULATIONS**

28 C.F.R. § 0.20 ... 12

**RULES**

Fed. R. App. P. 41(c) ... 9

**OTHER AUTHORITIES**

OLC Mem., 25 Op. O.L.C. 177, 180 (2001) .......... 12

OLC Mem., 2026 WL 2676958 (Sept. 4, 2026) .......... 2

Dep't of Justice, *United States Attorneys' Annual Statistical Report: Fiscal Year 2020, available at* https://perma.cc/9URG-MGKE .......... 10

Los Angeles Times, *Trump administration is 'playing shadow games' with top SoCal prosecutor, public defenders say*, (Sept. 5, 2026), https://www.latimes.com/california/story/2026-09-05/public-defenders-target-trump-federal-prosecutor-bill-essayli-in-socal .......... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants again seek to disqualify Bilal Essayli from working on or supervising their criminal prosecutions in any capacity, relying on the Ninth Circuit's recent decision in *United States v. Jackson*, —F.4th—, 2026 WL 2387099, *11 (9th Cir. Aug. 17, 2026). But *Jackson* does not require that relief, and it certainly should not be *extended* as defendants seek—especially now that the Attorney General has amended the delegation of authority to Essayli to make even clearer that *Jackson* is inapposite and the delegation lawful. (*See* Part II.E, below.) At the very least, any internal reorganization of the U.S. Attorney's Office for the largest district in the country should be stayed pending the Supreme Court's review of the Ninth Circuit's decision, whose mandate was itself stayed.

The most straightforward basis for deciding these motions, however, is the one the Court already found. This Court got the remedies question right the first time around, *see United States v. Ramirez*, 807 F. Supp. 3d 1086 (C.D. Cal. Oct. 28, 2025), *reconsideration denied*, 812 F. Supp. 3d 1011 (Dec. 12, 2025), and *Jackson* says nothing to the contrary. The motions should be denied.

## II. PROCEDURAL HISTORY

### A. Essayli's Appointment, *Ramirez*, and Follow-on Litigation

This Court recounted the relevant FVRA timeline in its decision last year. *See* 807 F. Supp. 3d at 1092–94. The last Senate-confirmed U.S. Attorney, Martin Estrada, resigned on January 17, 2025, three days before President Trump's inauguration on January 20. *See* 807 F. Supp. 3d at 1092. Under 5 U.S.C. § 3345(a)(1), then-First Assistant Joseph McNally automatically became Acting U.S. Attorney on January 17.

On April 2, then-Attorney General Pamela Bondi appointed Bilal Essayli as interim U.S. Attorney under 28 U.S.C. § 546(a), subject to a statutory maximum term of 120 days, which would run through the end of July. On July 29, Essayli resigned as interim U.S. Attorney and was (1) appointed by the Attorney General as a Special Attorney under 28 U.S.C. § 515(a) and (2) designated First Assistant U.S. Attorney. *See* 807 F. Supp. 3d at 1093.

This Court held that the designation of Essayli as First Assistant *did not* make him Acting U.S. Attorney under 5 U.S.C. § 3345(a)(1), despite the fact that he was "the first assistant to the office" that was vacant and the FVRA's time limitation had not yet run. *See* 807 F. Supp. 3d at 1095–99.[1] This Court further held that the Attorney General could not use the "general delegation provisions" of the Department of Justice (such as 28 U.S.C. §§ 509 & 510) to "lawfully authorize Essayli's service as Acting United States Attorney." 807 F. Supp. 3d at 1104–05. Accordingly, this Court concluded that Essayli could not "continue to perform any role as Acting United States Attorney, including prosecuting or supervising [] cases in that role." 807 F. Supp. 3d at 1112.

That was not the end of the matter, however, because the government had also argued that Essayli could still participate in the prosecution of criminal cases *as a DOJ attorney*. (*See* Gov't Supp. 5–7; Gov't Reconsider Opp. 5.) Both Special Attorneys under § 515(a) and AUSAs under § 542 are appointed by the Attorney General and allowed to prosecute cases and supervise others. Essayli was undoubtedly appointed by

---

[1] The Court also held that the FVRA "vacancy" began when Estrada resigned, not when Essayli resigned as § 546 interim U.S. Attorney. *Id.* at 1095–96. (*Cf.* Tr. 19–20.) The government now agrees with this Court. *See* OLC Mem. (Sept. 4, 2026), 2026 WL 2676958, https://www.justice.gov/olc/media/1460356/dl. That means, under §§ 3346 and 3349a, the FVRA's time limitation was 300 days from January 20, 2025, *see* § 3349a(b), which ended no later than November 16, 2025.

the Attorney General and authorized to do so. Indeed, he was designated "First Assistant U.S. Attorney," which historically (even before the FVRA) is the label given to the highest-ranking non-PAS Department of Justice lawyer in a U.S. Attorney's Office. (*See* Gov't Reconsider Opp. 7.)

Accordingly, because Essayli "was properly appointed as a Special Attorney and designated as the FAUSA," this Court held that there was "no basis to preclude Essayli from performing the lawful duties *of a FAUSA*." *Ramirez*, 807 F. Supp. 3d at 1112 (emphasis added). "And in *that* capacity, he could supervise these prosecutions (even though he cannot do so as Acting United States Attorney)." *Id.* As this Court explained, Essayli would not "wield the U.S. Attorney's powers." *Id.* at 1113. That position remained vacant, and so—under this Court's holding—no one in the office was eligible to stand in the shoes of the U.S. Attorney as acting under § 3345(a)(1). But that did not strip the lawyers in the office of our authority to represent the United States. Department of Justice lawyers, including AUSAs, "derive their power to prosecute directly from the Attorney General, not from a United States Attorney," and "the statutes and regulations that establish the structure of the Department of Justice . . . permit the delegation of many—if not most—of the Attorney General's duties," allowing "AUSAs to perform duties that are not exclusive to the office of the United States Attorney." *Id.* at 1113. This Court rejected defendants' argument challenging the Attorney General's authority to appoint high-ranking supervisory lawyers (such as a FAUSAs) under the Appointments Clause, on the ground that the Supreme Court has expressly stated "that Congress has vested in the Attorney General 'the power to appoint subordinate officers to assist him in the discharge of his duties.'" *Ramirez (reconsideration)*, 812 F. Supp. 3d

at 1015 (quoting *United States v. Nixon*, 418 U.S. 683, 694 (1974)). As the government pointed out in its briefing, a contrary rule would render most of the modern Department of Justice unconstitutional. (*See* Gov't Reconsider Opp. at 5; Gov't Supp. at 3 n.3.)[2]

Following this Court's decision in October 2025, the U.S. Attorney's Office for the Central District of California has adhered to this Court's disqualification ruling in all of the office's cases—despite the fact that, as a district court decision, it was precedential only in the cases before it. *Ramirez*, 807 F. Supp. 3d at 1112–13 n.26. Essayli has used his title of "First Assistant United States Attorney," and—notwithstanding the Department's nationwide litigating position—has avoided doing anything that might even arguably be construed as "wield[ing] the U.S. Attorney's powers," *id.* at 1113, such as signing certifications under 18 U.S.C. § 3731 for interlocutory appeals.[3]

In the months that followed, this Court has rejected a number of follow-on attempts to further disqualify Essayli, noting that defendants had alleged nothing that Essayli had done in their particular cases that any other DOJ lawyer could not do. *See, e.g.*, *United States v. Martinez*, 2:25-cr-692, Dkt. 45 at 6 (quoting 28 U.S.C. § 515(a)).

**B. Decisions Around the Country**

This Court's decision in *Ramirez* was the most consequential of the FVRA district court decisions because the Central District of California is home to almost 20 million

---

[2] This Court also summarily rejected a similar but weaker argument under the Appropriations Clause. *See Ramirez*, 807 F. Supp. 3d at 1110 n.24.

[3] *Cf.* Renewed Mot. 6–7 (conceding this but complaining that the government failed to dismiss its appeals fast enough and in one case filed a protective notice without a § 3731 certificate); *id.* at 10 n.9 (complaining that Chief Assistant U.S. Attorney Jennifer Waier signed an application for a § 6103(i) order).

people. But in 2025 and 2026, this issue was also litigated (or is being litigated) in six other districts.[4]

Those other district courts have generally held—as this Court did—that a non-incumbent First Assistant could not become Acting U.S. Attorney under § 3345(a)(1).[5] Some of these courts also rejected "the government's general delegation argument," which they (mis)understood to be that the Attorney General could "rely on [28 U.S.C.] §§ 509, 510, and 515 to temporarily fill the vacant U.S. Attorney position." *Garcia*, 2025 WL 2784640, *10–12 (capitalization altered).[6] The New York decision accepted "that the Attorney General may delegate the '*nonexclusive* duties' of a U.S. Attorney," but faulted the delegation order at issue for failing to "draw[] any distinction between . . . exclusive and nonexclusive duties." 814 F. Supp. 3d at 297–98 (emphasis added). The Virginia decision faulted the delegation order for being issued after the challenged action in that case. *See Comey*, 810 F. Supp. 3d at 782.[7]

---

[4] The defense claims (Renewed Mot. 22 n.12) to have "identified invalid service" in a total of 16 districts, but its list appears to simply include all 11 U.S. Attorney's Offices led by a First Assistant, *see* https://www.justice.gov/usao/us-attorneys-listing (visited Sept. 22, 2026), with the addition (without explanation) of the District of Delaware, both districts in Kentucky, and two districts in Texas. *But see* www.ded.uscourts.gov/sites/ded/files/news/ORDER%2028%20USC%20546.pdf.

[5] *See United States v. Giraud*, 795 F. Supp. 3d 560, 592 (D.N.J. Aug. 21, 2025), *aff'd*, 160 F.4th 390 (3d Cir. Dec. 1, 2025); *United States v. Garcia*, 2025 WL 2784640, *12–13 (D. Nev. Sept. 30, 2025), *aff'd sub nom.*, *Jackson*, 2026 WL 2387099, *11 (9th Cir. 2026); *In re Grand Jury Subpoenas to the Office of the New York State Att'y Gen.*, 814 F. Supp. 3d 284, 294 (N.D.N.Y. Jan. 8, 2026), *aff'd*, 2026 WL 2450485, *13 (2d Cir. Aug. 21, 2026); *United States v. Ramirez-Martinez*, No. 22-cr-01721, 2026 WL 113431, *14 (D.N.M. Jan. 14, 2026); *cf. United States v. Comey*, 810 F. Supp. 3d 768, 776 (E.D. Va. 2025) (§ 546 issue); *Rogoff v. Trump*, No. 26-cv-2566 (W.D. Wash.) (same).

[6] *See also Giraud*, 795 F. Supp. 3d at 595 (holding that § 3347 precludes delegating "all of the functions and duties of the United States Attorney" to another officer).

[7] *See also United States v. James*, 810 F. Supp. 3d 752 (E.D. Va. 2025).

The New Mexico decision, like the New York decision, initially faulted the government's delegation order for failing to identify the "functions or duties of the United States Attorney being delegated," 2026 WL 113431, at *16, but then held that a *revised* delegation order—issued by the Attorney General after oral argument—properly "delegate[d] only the 'delegable, nonexclusive functions of the United States Attorney,'" including "authority to supervise and conduct legal proceedings in that district." *Id.* at *19. The New Mexico decision also agreed with this Court's analysis regarding the authority of a FAUSA to conduct and supervise litigation, including adopting verbatim much of this Court's decision. *See id.* at *20 n.217, *23 n.239; *compare id.* at *23–24 *with Ramirez*, 807 F. Supp. 3d at 1112–14.

The upshot of all that litigation is that the District of New Mexico and the Eastern District of Virginia are now being led by First Assistants, without any significant legal challenge to that arrangement, while in New Jersey the district court rejected an attempt by the government to divide "all of the powers" of the office of U.S. Attorney among three different people, *see United States v. Naviwala*, 825 F. Supp. 3d 451, 491 (D.N.J. 2026), and the office is now led by a court-appointed U.S. Attorney under 28 U.S.C. § 546(d).[8] This District, along with the District of Nevada and Northern District of New York, all have FAUSAs whose authority is being challenged.

**C. The Ninth Circuit's Decision in *Jackson***

On August 17, 2026, the Ninth Circuit decided *Jackson*, affirming the district court decision in the Nevada case. As noted, the Nevada district court—like this Court—had rejected the government's principal argument under 5 U.S.C. § 3345(a)(1),

---

[8] *See* https://www.justice.gov/usao-nm; https://www.justice.gov/usao-edva; https://www.justice.gov/usao-nj (all visited Sept. 22, 2026).

and had disqualified the Acting U.S. Attorney in Nevada, Sigal Chattah, "from participating in or supervising their cases," 2025 WL 2784640, at *18. The Nevada district court did not, however, address whether Chattah could continue to serve as FAUSA under a narrower delegation of authority. The court also stayed its own disqualification order pending appeal. *See* 2025 WL 2985284.

*Jackson* spent the majority of its discussion agreeing with this Court's § 3345(a)(1) analysis, *see* 2026 WL 2387099, at *3–11, and also briefly addressed (and rejected) the argument "that the Attorney General validly delegated to [Chattah] the authority to oversee the U.S. Attorney's office." The court of appeals agreed with both the Nevada district court and this Court that 5 U.S.C. § 3347 prevents the Attorney General from using the "general delegation statutes governing the Department of Justice . . . to appoint Chattah as a de facto U.S. Attorney." *Id.* at *12; *compare Ramirez*, 807 F. Supp. 3d at 1104. The Ninth Circuit acknowledged "that the Attorney General has broad authority to designate individuals to perform certain functions and duties of a vacant office," *id.* at *12, but held that the "Attorney General's unqualified delegation of *all* of the U.S. Attorney's functions and duties to a single person is precisely the kind of de facto appointment of an acting officer, premised on the Attorney General's general authority to delegate duties, that section 3347(b) prohibits," *Jackson*, 2026 WL 2387099, at *13 (emphasis added, cleaned up). The court rejected the government's proffered "distinction between an acting official and one exercising a vacant office's powers by delegation . . . where, as here, an individual is delegated *all* the functions of an office that the government argues only has delegable functions." *Id.* at *12 (emphasis added).

But the court made clear that it was *not* addressing whether Chattah could lawfully serve as First Assistant, or in some other role, pursuant to a "more limited delegation":

> Nothing in the Attorney General's order suggests that Chattah was delegated only a share—even a large share—of the U.S. Attorney's powers. . . . We need not decide what kinds of more limited delegations might be permissible in the absence of a Senate-confirmed U.S. Attorney. To resolve these cases, we hold only that that [sic] the Attorney General's authority to delegate does not permit him to vest all of the functions and duties of a vacant office in a single person.

*Id.* at *13.

A couple days later, in the New York case, the Second Circuit held much the same thing. *See In re Grand Jury Subpoenas*, 2026 WL 2450485, at *13 ("[T]he FVRA's exclusivity provision bars . . . wholesale delegation . . . [W]e have no occasion today to delineate when a partial delegation becomes an impermissible one."). The Second Circuit "reaffirm[ed]," however, "that agency heads remain free to delegate a vast universe of delegable functions that reside in vacant PAS offices." *Id.* at *15; *see also* 814 F. Supp. 3d at 297 (agreeing that "the Attorney General may delegate the 'nonexclusive duties' of a U.S. Attorney . . . and that delegation of those duties is commonplace").

**D. The Government Seeks Supreme Court Review and Stays of Lower Court Decisions That Could Jeopardize Federal Law Enforcement**

Three days after *Jackson*, the government filed a motion to stay both the mandate and the judgment in that case. *See* C.A. No. 25-6214, Dkt. 62. The Ninth Circuit stayed the mandate but not the judgment. *Id.*, Dkt. 63. That means that the court did not stay the *precedential* effect of its decision, but stayed the mandate returning the case to the district court. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052–53 (9th Cir. 2017)

(quoting Fed. R. App. P. 41(c), advisory comm. note). As applied to the Nevada case, the point of that split decision was to prevent the district court's order disqualifying Chattah from participating in those particular defendants' cases from taking effect, but to allow the legal holding of the *Jackson* decision to take precedential effect throughout the Ninth Circuit and bind district courts as they render legal decisions (whether or not they then separately stay those decisions pending appeal).

Three weeks after *Jackson*, the government filed a petition for a writ of certiorari in the Supreme Court. *See* Cert. Pet., S. Ct. No. 26-304 (Attach. 5.) The petition presents both of the issues resolved against the government by the Ninth Circuit: (1) whether "a first assistant may serve as the acting officer under Section 3345(a) *only* if she was already first assistant when the vacancy arose"; and (2) whether "Section 3347(a) bars the agency head from delegating *all* of the duties of a vacant office that may be delegated to others and that are not exclusive to the vacant office." *Id.* at 3 (emphases added). The government explained that it moved swiftly to seek certiorari given the importance of both questions presented:

> Presidents of both parties have used the two tools at issue—designating new first assistants and delegating duties to non-acting officers—dozens of times to select trusted officials to temporarily carry out their priorities, with the Legislative Branch's imprimatur. Until this Administration, those practices were almost never challenged, much less successfully. Yet in the last year, three courts of appeals have upended both practices—and have done so in the context of prosecutorial functions, where the President's Article II interests are at their apex.

Cert. Pet. 31 (citations omitted); *see id.* at 2–3, 17–18, 27–28. The petition also notes the real-world stakes for federal law enforcement: "the decision below threatens to inject mass confusion into five U.S. Attorney's Offices in the Ninth Circuit that collectively

handle over 8000 civil and criminal cases annually." Cert. Pet. 5; *see also id.* at 32. Foremost among them is the Central District of California, with more than 5000 of those cases. *See* Dep't of Justice, *United States Attorneys' Annual Statistical Report: Fiscal Year 2020*, Tbls. 1, 4, https://perma.cc/9URG-MGKE.

### E. The Attorney General Issues Essayli a Revised Delegation Order to Comply with *Jackson* and Clarify the Limits of His Authority as a FAUSA and Member of the U.S. Attorney's Office

Given the importance of the orderly functioning of the justice system in the Central District, the Department has also moved to comply with *Jackson* pending its review by the Supreme Court. On September 23, 2026, the Attorney General issued a revised delegation order for Essayli, making clear that he has been delegated some of the Attorney General's own independent powers to conduct and supervise litigation in the district and only "*certain* functions and duties" of the "vacant office" of U.S. Attorney, *Jackson*, 2026 WL 2387099, at *12 (emphasis added), not to include any nondelegable duties and specifically excluding the "duties of the U.S. Attorney" that *Jackson* suggested may "not [be] delegable," *id.* at *12. The revised delegation order reads, in full:

> By virtue of the authority vested in me as the Attorney General by law, including 28 U.S.C. §§ 509, 510, 515, 542, and 543, I hereby approve the July 29, 2025 appointment of Bilal A. Essayli as a Special Attorney in the Central District of California, his July 26, 2026 appointment as an Assistant United States Attorney,[9] and his July 29, 2025 designation as First Assistant United States Attorney for that District; and I hereby authorize him to exercise certain functions and duties of the office of United States Attorney and also of my own office. Such functions and duties include the authority to conduct and supervise any kind of legal proceeding within that District, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States Attorneys are

[9] The reference to § 542 is because, for administrative reasons unrelated to this case, the Attorney General appointed Essayli as an AUSA under 28 U.S.C. § 542(a) in July 2026. (Attach. 2.)

> authorized by law to conduct, but do not include any function or duty that by law may be performed only by a United States Attorney, and do not include certifications under 18 U.S.C. § 3731, certifications under 18 U.S.C. § 5032, and applications under 26 U.S.C. § 6103(i)(1)(B).

(Attach. 1.) Like the revised delegation order in New Mexico, *see* 2026 WL 113431, at *19 (Attach. 4), this revised order specifies that Essayli can conduct and supervise legal proceedings in the district, as opposed to simply cross-referencing § 515. The revised order also expressly carves out specific powers and makes clear that Essayli is exercising not just certain powers of the vacant office of U.S. Attorney, but—like all other AUSAs and Special Attorneys—certain delegated powers of the Attorney General to prosecute criminal cases and conduct civil litigation on behalf of the United States. *See Ramirez*, 807 F. Supp. 3d at 1113.

## III. ARGUMENT

### A. Defendants' Accusations of Bad Faith Are Meritless

As detailed above, the record in this case and in related litigation over the past year-and-a-half demonstrates many things, none of which could reasonably be described as bad faith. And yet that is the accusation: that "[t]he government is playing shadow games [sic] with the most consequential powers a government can wield against its population." (Renewed Mot. 23.)[10] Because bad faith is the thrust of the defense argument—and necessary to its ultimate contention that the indictments should be dismissed, *but see Ramirez*, 807 F. Supp. 3d at 1109 (citing *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999))—the government addresses that charge first.

---

[10] Although its precise meaning is unclear, the charge did garner media attention. *See* Brittny Mejia, "Trump administration is 'playing shadow games' with top SoCal prosecutor, public defenders say," L.A. Times (Sept. 5, 2026), *available at* https://www.latimes.com/california/story/2026-09-05/public-defenders-target-trump-federal-prosecutor-bill-essayli-in-socal.

It is false. The government relied on the universally accepted interpretation of § 3345(a)(1) that had gone unchallenged for more than 25 years, *see* 25 Op. O.L.C. 177, 180 (2001), and had been used to designate the *past five* Acting Solicitors General (Cert. Pet. 2)—the DOJ official responsible for supervising not only all government litigation before the Supreme Court but also all appellate litigation nationwide. *See* 28 C.F.R. § 0.20. It relied on the view of the Government Accountability Office, *an arm of Congress*, "endorsing the delegable-versus-nondelegable distinction that the government advances here." Cert. Pet. 28; *see also id.* at 17 ("concur[ing]" in the government's reading of § 3345(a)(1), as well). Win or lose on these questions, the government's position is nowhere near bad faith.

Even more objectionable is defendants' suggestion that the government's efforts to *comply* with this Court's orders set up an inappropriate "moving target." (Renewed Mot. 4.) Defendants are wrong that the "decision not to use a power *is* the exercise of authority." (*Id.*) Not when the reason for that decision is an order of an Article III court: the government follows court orders. And the government's attempts to apply this Court's reasoning not only to the cases before it but to every case in the Central District is not a "track record" that demonstrates "slipperiness." (*Id.* at 5–7.) It is a good-faith attempt to advocate for the position of the United States before the federal courts while still complying with adverse decisions.

To the contrary, defendants are the ones who seek to bring this Court into the realm of politics rather than law. This Court should continue to decline the invitation. *See Ramirez*, 807 F. Supp. 3d at 1114 ("This court's role, however, is to apply the statutes as written and as interpreted by binding case law."). The thrust of defendants'

argument is no longer about the FVRA or Essayli's (long expired) acting status under § 3345(a)(1). Now it is whether a specific, senior-ranking prosecutor in the U.S. Attorney's Office is allowed to work there, and whether he has the same ability to exercise supervisory authority that the next most senior AUSA in the office would have if Essayli were for some reason disqualified. (*See* Renewed Mot. 20 ("Essayli's supervision of this case exemplifies his exercise of prosecutorial powers he does not possess . . . He *is* therefore uniquely unlike his colleagues.").) Defendant Tran's counsel even invoked politics directly. (*See Tran* Dkt. 68 at 3–4; *see also* Dkt. 47 at 8 ("Then there's Bill Essayli. When it comes to saying anything to please a president with autocratic dreams, the former Assembly member is a bootlicking All-Star." (favorably quoting an L.A. Times article)).)

This Court should reject defendants' claims of bad faith and decide this case on the law.

### B. Essayli Is Allowed to Conduct and Supervise Litigation in the Central District

On the law, there is no basis to order First Assistant Essayli to stop doing his job. As noted above, this Court has already held that "Essayli was properly appointed as a Special Attorney and designated as the FAUSA for the Central District." 807 F. Supp. 3d at 1112; *see also* 812 F. Supp. 3d at 1016. As further noted, he has since been appointed an Assistant U.S. Attorney under 28 U.S.C. § 542, as well. In all events, he is one of the 10,000 attorneys who work for the Department of Justice. (Gov't Supp. 3.)

This Court correctly determined last year that there is "no basis to preclude Essayli from performing the lawful duties of a FAUSA." 807 F. Supp. 3d at 1112.

*Jackson* says nothing to the contrary. Indeed, as defendants admit, "*Jackson* declined to rule" on "delegations of narrower powers." (Renewed Mot. 1.) The decision certainly should not be *extended* by this Court while the government seeks Supreme Court review.

*1. The government's position.*

Defendants are correct that the government has advanced alternative litigating positions, including in response to this Court's orders. So, to summarize:

- Bilal Essayli was appointed by the Attorney General in July 2025 to serve as a Special Attorney in the U.S. Attorney's Office for the Central District of California. In the same order, he was also designated First Assistant U.S. Attorney of that office.
- Under the FVRA, 5 U.S.C. § 3345(a)(1), Essayli automatically became Acting U.S. Attorney, for a 300-day period from the beginning of the vacancy in January 2025, *see* 5 U.S.C. §§ 3346 and 3349a, which ended in November 2025.
- This Court, in October 2025, rejected the government's § 3345(a)(1) argument in three specific cases. But to avoid serious disruption in the administration of justice in the Central District (and flooding this Court with thousands of identical disqualification motions in cases where, the vast majority of the time, Essayli had no personal involvement), the government acted consistently with this Court's legal holding in all pending cases, despite its disagreement with that holding and its appeal from the (stayed) Nevada decision in *Jackson*.
- The government also maintains its position that, under § 3347 of the FVRA, the Attorney General is allowed to delegate *all* of the delegable powers of a

vacant office to a single person. Cert. Pet. i. *But see Ramirez*, 807 F. Supp. 3d at 1105; *Jackson*, 2026 WL 2387099, at *13.

- The government does not concede that any specific function or duty of a U.S. Attorney is nondelegable. The government noted the possibility that there may be such functions and duties (*see* Gov't Supp. 7), as did the Ninth Circuit, *see Jackson*, 2026 WL 2387099, at *12. So did this Court. *See Ramirez*, 807 F. Supp. 3d at 1113. But this Court has not found it necessary to opine on such functions or duties not at issue in any case before it, *see, e.g.*, *United States v. Martinez*, No. 2:25-cr-692-MEMF, Dkt. 45 at 6–7, and in an effort to minimize litigation risk the government has avoided having Essayli perform arguably nondelegable functions or duties. (Gov't Notice re *Jackson* at 6–7.)
- In an effort to prophylactically comply with *Jackson*—even though the judgment has not been enforced, because the mandate has been stayed pending certiorari—the Attorney General has revised Essayli's delegation order to explicitly carve out § 3731, § 6103(i), and § 5032, the potentially nondelegable authorities noted in *Jackson*, and well as any other nondelegable authorities (as was also done in the December 2025 New Mexico delegation). And the Attorney General has also delegated certain of his own powers to Essayli, wholly independent from the powers of the office of U.S. Attorney.

*Jackson* should not be extended to cover this case for two independent reasons. First, there is no legal or logical basis to read § 3347 as barring the Attorney General's delegation of the functions or duties of *his own office* just because they overlap with the functions and duties of the vacant office of U.S. Attorney. The Attorney General, U.S.

Attorneys, Main DOJ lawyers, and AUSAs can all seek indictments and prosecute cases. As relevant here, the Department of Justice is unlike other federal agencies, to which the FVRA also applies, where many actions can be taken only by PAS officials. DOJ "statutes and regulations permit the delegation of many—if not most—of the Attorney General's duties." *Ramirez*, 807 F. Supp. 3d at 1113. And to the extent there is question whether a specific duty entrusted by statute to U.S. Attorneys and the Attorney General may be delegated by the Attorney General to a subordinate Department lawyer, those questions can be resolved in a case where such a statute is actually at issue.

Second, as the government explained in its petition to the Supreme Court, *Jackson*'s delegation holding "provided no guidance on how much the Attorney General would need to diminish a delegee's authority to no longer qualify as a 'de facto Acting U.S. Attorney.'" Cert. Pet. 32. All the Ninth Circuit said is that "the Attorney General's authority to delegate does not permit him to vest *all* of the functions and duties of a vacant office in a single person," *Jackson*, 2026 WL 2387099, at *13 (emphasis added), leaving the government "to guess at how much would satisfy the relevant courts," and creating "a real risk that the functioning of U.S. Attorney's Offices would be imperiled" in the meantime, Cert. Pet. 33. *Jackson* thus did not hold that a FAUSA unable to perform the three functions of a U.S. Attorney that Essayli is expressly not authorized to perform—as well as any non-delegable functions that may exist—is a "de facto Acting U.S. Attorney." And this Court should not extend *Jackson* in that manner, especially given the flaws in that decision and the government's pending petition for Supreme Court review.

*2. Defendants' arguments are meritless.*

Defendants contend that *Jackson* conflicts with this Court's decision in *Ramirez* with respect to the distinction between Special Attorney and FAUSA. (*See* Renewed Mot. 12.) This Court held that "Essayli was properly appointed as a Special Attorney and designated as the FAUSA for the Central District." 807 F. Supp. 3d at 1112. That was correct, but its subsequent discussion focused on Essayli's role as FAUSA and "performing the lawful duties of a FAUSA," *id.* at 1112–13. Defendants, however, quote *Jackson* as stating that "[t]he only function of the first assistant *qua* first assistant is to be the Acting U.S. Attorney in the event of a vacancy" (Renewed Mot. 12, quoting 2026 WL 2387099, at *12), and they conclude from this "that a first assistant has no lawful duties" (*id.*). The quote is accurate, but defendants' conclusion does not follow. Even accepting that the only function of a FAUSA *inherent to the position of FAUSA* may be to become the Acting U.S. Attorney under the FVRA, the issue here is *supervisory authority* more generally. As the government explained, Essayli was "validly designated to a supervisory position in the Central District of California (specifically, 'First Assistant')," and the Attorney General "had the authority to make him a supervisor"—here, "as First Assistant, but she also could have designated him . . . Executive Assistant U.S. Attorney" or any other title making clear that he is the seniormost AUSA in the office. (*Id.* at 5.) *Ramirez* could have been phrased as holding that Essayli could "perform[] the lawful duties" of a Special Attorney or supervisory AUSA, *id.* at 1112–13, without reference to anything special about the "FAUSA" position (other than its pre-FVRA meaning). But in all events, this Court's bottom-line holding was correct: Essayli has been validly appointed by the Attorney General to

perform the supervisory functions expressly and lawfully delegated to him. And *Jackson*'s statement that *Sigal Chattah's* Special Attorney appointment was impermissibly "unlimited," 2026 WL 2387099, at *12, does not apply here, given Essayli's express and limited delegation of powers discussed above.

Defendants' remaining arguments can be disposed of briefly:

*Hypothetical delegation*: Defendants' complaints about a "hypothetical delegation" no longer apply. (Renewed Mot. 2–4.) Nevertheless, the government maintains that, in a legal system based on discrete cases and controversies, U.S. Const., art. III, § 2, it is entirely appropriate to define the outer bounds of lawfully delegated power on a case-by-case basis rather than demanding that the Executive Branch announce *ex ante* what the limits are on pain of judicial invalidation of the whole. *Cf. Russo v. Sec'y of Commerce*, 2026 WL 2602668, at *10 (11th Cir. Sept. 3, 2026) (Pryor, C.J., concurring) ("federal courts do not sit as councils of revision," quoting *United States v. Rutherford*, 442 U.S. 544, 555 (1979)). There may be cases where a defendant decides to argue that Essayli—or any other supervisory AUSA—has exercised some nondelegable power of the vacant office of U.S. Attorney. (*See, e.g.*, Renewed Mot. 4–5 & n. 2 (citing "grants of immunity under 18 U.S.C. § 6003 and bankruptcy investigations under 18 U.S.C. § 3057").) But these cases are not among them.

*Boilerplate*: Defendant complains that "[b]oilerplate limitations do not cut it even when they are explicit, broad, and fixed," and even when they "disavow[] all non-delegable powers." (Renewed Mot. 8 (citing *Bullock v. BLM*, 489 F. Supp. 3d 1112, 1126 (D. Mont. 2020)).) But most appointments are "boilerplate," and anyway Essayli's revised delegation order is not. As for *Bullock*, that case involved a subordinate officer

who "actually exercised powers reserved to the" PAS office, *id.* at 1128, in violation of § 3348(d), *id.* at 1130, when he personally overruled the plaintiffs' objections to two "Resource Management Plans," *id.* at 1120. That is far afield from the defendants here, who were indicted by grand juries for, respectively, possessing a firearm after a dozen prior felonies (*Ramirez* Dkt. 1) and receiving $400,000 worth of stolen Skechers shoes (*Tran* Dkt. 15), without any personal involvement by Essayli.

*No supervisors*: There is no basis for defendants' apparent assumption that the Attorney General must personally delegate "supervisory power to various chiefs and managers in the Central District." (Renewed Mot. 14–15 & n.11; *cf.* Gov't Reconsider Opp. 5 & n.5 ("Defendants cannot seriously contend that most of the Department of Justice is unconstitutional.").) But even if that were true, in this case—with respect to Essayli—the Attorney General has. And to the extent defendants' argument is that non-PAS AUSAs require some PAS supervision in order to keep working, the Attorney General supplies that. In all events, there is no basis to hold that Essayli *alone* cannot serve as an AUSA with supervisory authority.

*95% Rule*: After contending that "wholesale delegation" is invalid under *Jackson* (Renewed Mot. 1), defendants ask this Court to extend that holding to "delegating 'nearly all'"—or "95%"—"of a vacant office's powers rather than all of them" (*id.* at 9). But that is precisely the question *Jackson* left open, 2026 WL 2387099, at *13, as did the Second Circuit, *see* 2026 WL 2450485, at *15 ("agency heads remain free to delegate a vast universe of delegable functions that reside in vacant PAS offices"). And, for all the reasons discussed, this Court should not extend *Jackson* in that manner.

*Appropriations*: Finally, defendants' Appropriations Clause argument is not any more plausible this year than it was when this Court rejected it last year. Certainly *Jackson* did nothing to change that. *See Ramirez*, 807 F. Supp. 3d at 1110 n.24.

*3. Defendants' real objection is to Essayli being the highest-ranking attorney in the office—which is a political argument, not a legal one.*

All agree that, under *Jackson*, Essayli cannot serve as the *de jure* U.S. Attorney or Acting U.S. Attorney, although that is the first question the government is presenting to the Supreme Court for its review. Nor can he, under *Jackson*, serve as a *de facto* U.S. Attorney—although that, too, is closely tied to the second question the government is presenting to the Supreme Court, which is whether *all* of the delegable powers of a vacant office may be delegated to a single person. Cert. Pet. i. Defendants, however, seek to expand *Jackson* beyond its holding and reasoning to a further, amorphous category, which would be both unworkable and incoherent.

Defendants' theory collapses once its logic is taken seriously. As the government has noted, there are agencies where, without a PAS official, nothing can get done. (Gov't Supp. 7 (citing *Southwest General v. NLRB*, 796 F.3d 67, 80 (D.C. Cir. 2015)).) The Department of Justice is not one of them: line attorneys can prosecute cases. The lawyers in the Department work for the Attorney General, and they have since 1870. (Gov't Supp. 2; Cert. Pet. 6–8.) So if there is a vacant U.S. Attorney position—whether because (as this Court held last year) the designated First Assistant is ineligible to serve as Acting, or because (if the § 3346 time limit has elapsed anyway) the Acting has reverted to a FAUSA—what then? There is still an office full of AUSAs; can no one be in charge? Not even *primus inter pares*? Defendants have no answer. Subject to a

notable hedge (Renewed Mot. 15 n.11), defendants do not go so far as to say that *no one* is allowed to supervise anyone else in the Central District, and that all orders must come from D.C.[11] Surely they realize that that level of organizational flyspecking is not going to be adopted by this Court (or any other). But that is where their logic leads them.[12] Defendants' only other objection would be that Essayli is not lawfully working in the office *at all*—even as a line attorney who could prosecute their cases personally—but this Court has already held that he is.

Ultimately, defendants' real objection appears to be to Essayli's continued service as the highest-ranking supervisory attorney in the office precisely *because the President of the United States and the Attorney General want him to be*. That, however, is a political argument—not a legal one. *See Ramirez*, 807 F. Supp. 3d at 1114.

### C. Any Extension of *Jackson* Should At Least Be Stayed or Held in Abeyance Pending the Supreme Court's Review of That Case

In the alternative, if this Court does find it legally necessary to extend *Jackson* and disqualify First Assistant Essayli from supervising criminal and civil cases in the Central District, despite the Attorney General's express delegation, then the government would ask for a stay of this Court's order pending the Supreme Court's review. Further alternatively, without reaching the merits, this Court could hold the motions in abeyance pending guidance from the Supreme Court.

---

[11] And even if no one were allowed to be in charge of the whole office, some AUSA will still be the seniormost AUSA on a particular case.

[12] If Essayli resigned tomorrow, and Chief Assistant U.S. Attorney Jennifer Waier became the official who would effectively have to supervise everyone else, subject in turn to the Attorney General's supervision, she obviously could not *become* unlawful by virtue of being the seniormost AUSA in the office. But that is the logic of defendants' position.

If this Court did extend *Jackson*, the government would be entitled to a stay of that order (and any similar order in another case) under a straightforward application of the factors in *Nken v. Holder*, 556 U.S. 418, 434 (2009). There is a strong likelihood that the Supreme Court will reverse the Ninth Circuit's decision on its delegation holding for the reasons expressed in the petition, *see* Cert. Pet. 25–29, which *a fortiori* would apply to the more limited delegation here. Disqualifying Essayli would cause irreparable injury to the functioning of the Executive Branch and the separation of powers, *see, e.g.*, *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), and the third and fourth factors "merge when the Government is" one of the parties, *Nken*, 556 U.S. at 435. Nor would disqualifying Essayli—even if defendants have standing in a technical sense, *see Ramirez*, 807 F. Supp. 3d at 1112 n.26—provide defendants with any meaningful benefit. Changing the management structure of the U.S. Attorney's office by judicial fiat would not benefit Ramirez or Tran. Defendants do not have a right to choose their prosecutors, and these are ordinary criminal cases that would have been brought under any administration.

Moreover, the Ninth Circuit has already recognized that the status quo should be maintained pending certiorari in *Jackson*. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (although stay "orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases"). That is why the Ninth Circuit stayed its mandate returning the case to district court, *see* C.A. No. 25-6214, Dkt. 63, which kept in place the stay pending appeal issued by the district court. It would not make any sense for the Nevada decision—much less an *extension* of that decision—to cause an immediate disqualification in the Central District of California while the disqualification order in Nevada itself remains stayed.

Finally, and once again in the alternative, this Court could hold these motions in abeyance pending the Supreme Court's review of *Jackson*. There is no pressing reason to decide the issue right away if any relief should be stayed pending certiorari regardless, and at the very least any decision by the Supreme Court would affect this Court's assessment of whether Essayli's revised, limited delegation is either necessary or sufficient.

## IV. CONCLUSION

Defendants' attempt to disqualify the supervisor of the prosecutors in their cases should be rejected, and their renewed motions to dismiss denied. Alternatively, this Court should either stay any disqualification order, or hold these motions in abeyance, pending the Supreme Court's review of *Jackson*.