IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAIME HECTOR RAMIREZ,<br>Defendant. | Case No. 5:25-cr-00264-SSS |
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>TU ANH TRAN,<br>Defendant. | Case No. 8:25-cr-00250-JVS-1 |

**ORDER GRANTING IN PART AND DENYING IN PART RENEWED MOTIONS TO DISMISS AND TO DISQUALIFY BILAL A. ESSAYLI FROM SUPERVISING CASES**

## I. INTRODUCTION

Last year, this court determined that Bilal A. Essayli ("Essayli") was not lawfully serving as Acting United States Attorney for the Central District of

California under the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. §§ 3345–3349d. *See United States v. Ramirez*, 807 F. Supp. 3d 1086, 1094–95 (C.D. Cal.), *reconsideration denied*, 812 F. Supp. 3d 1011 (C.D. Cal. 2025). Nevertheless, the court declined to dismiss the indictments against Defendant Jaime Hector Ramirez ("Ramirez") and two others. *Id.* at 1106–12. Although the court disqualified Essayli from participating in or supervising those prosecutions as Acting United States Attorney, the court allowed him to do so in his role as a Special Attorney and First Assistant United States Attorney ("FAUSA") for the Central District. *Id.* at 1113–14. In July of 2026, the court made the same rulings as to Defendant Tu Anh Tran ("Tran"). *See United States v. Tran*, Case No. 8:25-cr-250-JVS-1 (C.D. Cal. July 24, 2026) (ECF No. 56).

But the legal landscape changed on August 17, 2026, when the Ninth Circuit issued *United States v. Jackson*, 187 F.4th 1198 (9th Cir. 2026). Given *Jackson*, both Ramirez and Tran ("Defendants") have filed renewed Motions, again seeking to disqualify Essayli from their cases and to dismiss their indictments. *See* ECF No. 69 ("Defendant['s] Renewed Motion to Dismiss and to Disqualify");[1] and ECF No. 60 in Case No. 8:25-cr-00250-JVS-1 ("Motion for

[1] Unless otherwise specified, citations to court filings in this Order refer to the *Ramirez* docket.

Reconsideration of Motion to Dismiss and Disqualify Bilal Essayli") (collectively "the renewed Motions").

As explained to follow, the renewed Motions are GRANTED IN PART and DENIED IN PART. The renewed Motions are GRANTED insofar as Essayli—even in his designated role as a Special Attorney and FAUSA—is disqualified from (1) participating in or supervising these cases, or (2) otherwise supervising any attorneys in the handling of these cases. The court, however, DENIES the requests to dismiss Defendants' indictments.

## II. <u>BACKGROUND</u>

### A. Factual and Legal Background

Much of the factual and legal background for these renewed Motions is set forth in detail in *Ramirez*, and the court does not repeat all those details here. Rather, because *Jackson* rejected some of the reasoning in *Ramirez*, the court begins by summarizing relevant aspects of *Ramirez* and *Jackson* to provide necessary context for its rulings. The court otherwise presumes familiarity with *Ramirez*.

On March 27, 2025, then-Attorney General Pamela Bondi appointed Essayli as Interim United States Attorney for the Central District under 28 U.S.C.

§ 546(a),[2] replacing Joseph McNally. At the time, McNally was serving as Acting United States Attorney, having automatically assumed the office's functions and duties under 5 U.S.C. § 3345(a)(1) of the FVRA because he was the FAUSA when the prior United States Attorney (Martin Estrada) had resigned shortly before President Trump's January 20, 2025 inauguration.[3] *See Ramirez*, 807 F. Supp. 3d at 1092.

---

[2] Section 546 provides:

> (a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.
>
> (b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.
>
> (c) A person appointed as United States attorney under this section may serve until the earlier of—
>
> (1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or
>
> (2) the expiration of 120 days after appointment by the Attorney General under this section.
>
> (d) If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

[3] Section 3345 provides in part:

> (a) If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to

(continued . . . )

On July 29, 2025—when Essayli's lawful 120-day term as Interim United States Attorney under § 546(c)(2) was about to expire—Essayli resigned as Interim, and Bondi immediately appointed him as a Special Attorney and designated him as the FAUSA for the Central District, attempting to make him the Acting United States Attorney. *Id.* at 1093. In *Ramirez*, this court determined that Essayli was not lawfully serving as Acting United States Attorney. *Id.* at 1094–95. That is, the attempt to install Essayli as Acting United States Attorney by appointing him as a Special Attorney and designating him as FAUSA after the vacancy arose violated the FVRA. *Id.* at 1103–05. Under § 3345(a)(1) of the FVRA, only the FAUSA in place at the time the vacancy arose automatically succeeds into the role performing the office's functions and duties. *Id.* As detailed in *Ramirez*, attempting to install Essayli as Acting United States Attorney by designating him as FAUSA *after* the vacancy arose was an improper maneuver to avoid the statutory advice-and-consent requirement for appointments of United

---

> be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—
>
> (1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346 . . . .

States Attorneys. *See* 28 U.S.C. § 541(a).[4] Accordingly, this court disqualified Essayli from participating in or supervising the movants' prosecutions as Acting United States Attorney. *Id.* at 1106–12.

Despite the violation of the FVRA, however, this court denied requests to nullify or otherwise dismiss the indictments against Ramirez and the other movants. It did so because the FVRA's nullification provisions did not bar the indictments, the indictments were otherwise proper, and there had not been the necessary "flagrant misbehavior" and "substantial prejudice" to justify dismissal as a sanction under the court's supervisory powers. *Id.* at 1111 (quoting *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020)).

Nevertheless—although this court disqualified Essayli from prosecuting those Defendants as the Acting United States Attorney for the Central District—the court allowed him to continue supervising those prosecutions in his role as a Special Attorney and FAUSA. *Id.* at 1113–14. This court reasoned that, because Essayli had been "properly appointed as a Special Attorney and designated as the FAUSA for the Central District," he remained the FAUSA even if he "was never lawfully serving as Acting United States Attorney." *Id.* at 1112. Because

[4] The President had not (and still has not) nominated anyone for the position of United States Attorney for the Central District of California under § 541(a), which provides: "The President shall appoint, by and with the advice and consent of the Senate, a United States Attorney for each judicial district."

"[t]he court ha[d] no basis to preclude Essayli from performing the lawful duties of a FAUSA . . . in *that* capacity, he could supervise [those] prosecutions (even though he [could] not do so as Acting United States Attorney)." *Id.*[5]

*Jackson*, however, changes the analysis. *Jackson* reviewed *United States v. Garcia*, 2025 WL 2784640 (D. Nev. Sept. 30, 2025), a decision very similar to *Ramirez* arising out of the same factual posture in the District of Nevada.[6] *Garcia* involved challenges by four defendants to the service of Sigal Chattah, who—like Essayli—had been appointed by Bondi as a Special Attorney and designated as the FAUSA for that District immediately before expiration of Chattah's 120-day term under 28 U.S.C. § 546(a) as the Interim United States Attorney. Indeed, the appointment and designation documents for Essayli and Chattah are identical (except for the names and pronouns), and were issued only one day apart.[7] *Garcia*—like *Ramirez*—had determined that Chattah was not

---

[5] Neither side in *Ramirez* sought to file an interlocutory appeal, and the prosecutions of Ramirez and Tran remain pending.

[6] *Garcia* ruled on consolidated motions by four defendants, including Devonte Devon Jackson. The interlocutory appeal from *Garcia* was captioned as "*United States v. Jackson*" in the Ninth Circuit.

[7] The July 29, 2025 appointment by Bondi of Essayli as a Special Attorney and designation as FAUSA for the Central District states in full:

> By virtue of the authority vested in the Attorney General by law, including 28 U.S.C. § 509, 510, and 515, I hereby appoint Bilal A.

(continued . . . )

> Essayli as a Special Attorney and designate him as First Assistant United States Attorney for the Central District of California, effective upon his resignation as United States Attorney for the Central District of California. As First Assistant United States Attorney, Mr. Essayli will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d.

ECF No. 74-3. And the July 28, 2025 appointment by Bondi of Chattah as a Special Attorney and designation as FAUSA for the District of Nevada states in full:

> By virtue of the authority vested in the Attorney General by law, including 28 U.S.C. § 509, 510, and 515, I hereby appoint Sigal Chattah as a Special Attorney and designate her as First Assistant United States Attorney for the District of Nevada, effective upon her resignation as United States Attorney for the District of Nevada. As First Assistant United States Attorney, Ms. Chattah will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d.

*See* ECF No. 29-3 at 2 in *United States v. Garcia*, 2:25-cr-230-DGC (D. Nev. Sept. 10, 2025). In this regard, "[courts] may take judicial notice of undisputed matters of public record . . . , including documents on file in federal or state courts." *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citations omitted).

Likewise, both Essayli and Chattah received letters from the Executive Office for United States Attorneys stating:

> You are hereby appointed as a Special Attorney to the United States Attorney General pursuant to 28 U.S.C. § 515. Subject to the terms and conditions set forth below, you are authorized to conduct in the [respective judicial District], any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct.

ECF No. 33-4 at PageID#:279; ECF No. 29-3 at 7 in *Garcia*, 2:25-cr-230-DGC (D. Nev. Sept. 10, 2025).

validly serving under the FVRA as Acting United States Attorney for that District. *See Garcia*, 2025 WL 2784640, at *1. *Garcia* disqualified Chattah from supervising the cases herself or supervising any attorneys handling them, *id.* at *18,[8] although the district court stayed the disqualifications pending the government's appeal to the Ninth Circuit. *See United States v Garcia*, 2025 WL 2985284, at *2 (D. Nev. Oct. 23, 2025) (granting motion to stay pending appeal).

On August 17, 2026, *Jackson* affirmed *Garcia*, upholding the district court's conclusions that Chattah was improperly serving as an Acting United States Attorney and that she was disqualified from the prosecutions at issue. Specifically, *Jackson* held that the appointment of Chattah as a Special Attorney and corresponding designation of her as FAUSA for the District of Nevada was an improper attempt to install her as Acting United States Attorney, in violation of the FVRA. *See* 187 F.4th at 1203–14. In those respects, *Jackson* confirmed this court's identical reasoning and conclusions in *Ramirez*.

But *Jackson* rejected the government's argument—an argument based, in large part, on this court's reasoning in *Ramirez*—that the Attorney General's delegation of authority to Chattah in her capacity as FAUSA allowed her

[8] Unlike in *Ramirez*, the *Garcia* court was apparently not specifically presented with the argument that Chattah could perform certain functions and duties of a United States Attorney in her capacity as the FAUSA.

to continue to supervise the prosecutions in that role.[9] *Id.* at 1214. According to *Jackson*, that designation as FAUSA did not control because "[t]he only function of the first assistant *qua* first assistant is to be the Acting U.S. Attorney in the event of a vacancy." *Id.* (citing 28 C.F.R. § 0.137(b)), and since "Chattah cannot [be the Acting U.S. Attorney] . . . her designation as 'first assistant' is not meaningful." *Id.*

*Jackson* placed substantial weight on the Attorney General's purported delegation of unlimited powers to Chattah, which *Jackson* deemed "[nothing] other than an attempt to assign Chattah all the functions and duties of the U.S. Attorney." *Id.* at 1215. It stated:

> The Attorney General's order does not identify any specific duties Chattah may perform or identify any powers delegated to Chattah in her capacity as a special attorney, as opposed to powers that the Attorney General assumed the FVRA would provide her as the Acting U.S. Attorney. The Attorney General did not even include a "boilerplate limitation" stating that Chattah was not delegated any non-delegable powers, which has been

[9] As Ramirez's renewed Motion points out, the government in *Jackso*n argued that even if the FVRA did not permit Chattah to perform all the functions and duties of the office of the United States Attorney, she could still serve by exercising the office's delegable duties. ECF No. 68. In so doing, the government in *Jackson* repeatedly cited *Ramirez* to the Ninth Circuit for the same proposition. The court has confirmed that the government in *Jackson* argued that "[Chattah] does not cease to be First Assistant U.S. Attorney, and there is no basis to conclude that she cannot continue prosecuting defendants pursuant to her authority as First Assistant," *United States v. Jackson*, No. 25-6214 (9th Cir. Oct. 31, 2025) (Dkt. No. 12.1 at 64) (citing *Ramirez*), and that the government cited *Ramirez* no less than nine times, *id.* at 5. In essence, *Jackson* rejected *Ramirez* on the relevant issues raised in these renewed Motions.

> used in some delegations in "an [unsuccessful] attempt to avoid running afoul of the FVRA."

*Id.* at 1214–1215 (brackets in *Jackson*) quoting *Bullock v. U.S. Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1126 (D. Mont. 2020)). Although *Jackson* recognized that "the Attorney General has broad authority to designate individuals 'to perform certain functions and duties' of a vacant office," it faulted Chattah's designation because "[n]othing in the Attorney General's order suggests that Chattah was delegated only a share—even a large share—of the U.S. Attorney's powers." *Id.* at 1215. The opinion explained:

> [Where] the government has taken the position in this case that *all* of the U.S. Attorney's functions and duties are delegable . . . the distinction [between an acting official and one exercising a vacant office's powers by delegation] is meaningless where, as here, an individual is delegated all the functions of an office that the government argues only has delegable functions.

*Id.*

*Jackson* thus rejected the view that Chattah could effectively "*be* the Acting U.S. Attorney, exercising all the functions and powers of that office, and the only effect of the FVRA is to prohibit her from calling herself 'Acting U.S. Attorney.'" *Id.* It reasoned that "[t]he Attorney General's unqualified delegation of all of the U.S. Attorney's functions and duties to [Chattah] is precisely the kind of de facto appointment of an acting officer, premised on the Attorney General's

'general authority . . . to delegate duties,' that section 3347(b) [of the FVRA] prohibits." *Id.* (citations omitted).[10] *Jackson* recognized that the panel "need not decide what kinds of more limited delegations might be permissible," stating that "[t]o resolve these cases, we hold only that the Attorney General's authority to delegate does not permit him to vest all of the functions and duties of a vacant office in a single person." *Id.* at 1215–16.[11]

And *Jackson* is no outlier. Only four days after *Jackson*, the Second Circuit also upheld a district court decision that found a violation of the FVRA under the same circumstances as in *Ramirez* and *Garcia*. *See In re Grand Jury Subpoenas to the Off. of N.Y. State Att'y Gen.*, 188 F.4th 595 (2nd Cir. 2026). In that case, John Sarcone, III,—like Essayli and Chattah—had purported to be the Acting United States Attorney for the Northern District of New York after being appointed a Special Attorney and designated as the FAUSA for that District. *Id.* at

[10] Section 3347(b) is a key component of the FVRA's exclusivity provisions, which mandate that the FVRA is the exclusive means for temporarily authorizing an acting official to perform the functions and duties of a "PAS" office. A PAS office is a position such as a United States Attorney that requires appointment by the President with the advice and consent of the Senate. *See, e.g.*, *Ramirez*, 807 F. Supp. 3d at 1091–92. Section 3347(b) "makes clear that statutes that provide 'general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency' do not supplant the procedures prescribed in the FVRA." *Jackson*, 187 F.4th at 1206.

[11] The *Garcia* defendants filed cross-appeals from the district court's refusal to dismiss their indictments, but *Jackson* determined that the cross-appeals were premature and dismissed them for lack of appellate jurisdiction. *See* 187 F.4th at 1216.

610. *In re Grand Jury Subpoenas* also affirmed the district court's disqualification of Sarcone from that case, and—like *Jackson*—rejected a reading of the FVRA that would allow a FAUSA to perform all the functions and duties of the United States Attorney based on a comprehensive delegation of such powers from the Attorney General after expiration of a 120-day term as Interim under 28 U.S.C. § 546(a). The Second Circuit reasoned that, under the FVRA, "whether someone is impermissibly serving as an acting officer turns on function, not form." *Id.* "Section 3345 [of the FVRA] defines an acting officer not by whether an individual claims that label but by whether he performs 'the functions and duties of the' vacant 'office.'" *Id.* "Under that functional conception of acting officers, the dispositive inquiry is whether a delegation is so comprehensive that an individual functionally occupies the vacant PAS office by performing its duties, thereby serving as the *de facto* acting officer." *Id.*

Applying that logic, the opinion held that Sarcone was impermissibly acting in violation of the FVRA because he had been granted "complete authority" from the Attorney General. The Second Circuit reasoned:

> Thus, while . . . cases confirm that non-acting officials may take on *some* delegable functions of a vacant PAS office—a proposition no party disputes—none of them supports the complete delegation of *all* of a PAS office's duties to a single individual as has occurred in the case before us. That distinction is decisive because it goes to

> the [FVRA's] exclusivity provision's determinative inquiry: whether a person's delegation is so comprehensive that he functionally occupies the vacant PAS office as the *de facto* acting officer.

*Id.* at 612–13. That is, although "agency heads remain free to delegate a vast universe of delegable functions that reside in vacant PAS offices . . . [,] the FVRA is violated when . . . a delegation is so comprehensive that its recipient functionally occupies the vacant office." *Id.* at 613. Like the Ninth Circuit in *Jackson*, the Second Circuit made clear that it "ha[d] no occasion today to delineate when a partial delegation becomes an impermissible one." *Id.* at 611. Rather,

> the sweeping delegation given to Sarcone of all the duties of the U.S. Attorney for the Northern District left him indistinguishable from an *acting officer*. To install someone in a vacant office through a general delegation authority that § 3347(b) [of the FVRA] expressly forbids, is to install an acting officer by another name. The FVRA forbids it.

*Id.*[12]

---

[12] The Third Circuit in *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025), also rejected the argument that even if someone is not the lawful Acting United States Attorney, "she nonetheless 'may continue to exercise prosecutorial and supervisory authority . . . pursuant to the Attorney General's express delegation of authority to her in her capacity as Special Attorney and First Assistant U.S. Attorney.'" *Id.* at 402–03 (quoting the government's brief). Like *Jackson* and *In re Grand Jury Subpoena*, *Giraud* reasoned that "[t]his *de facto* U.S. Attorney-by-delegation theory is plainly prohibited by the FVRA's exclusivity provision." *Id.* at 403. *Giraud* too recognized that "it is possible a more dispersed delegation of authority might not create a *de facto* U.S. Attorney and therefore might not run afoul of the FVRA's exclusivity provision—though we do not decide that today because those are not the facts of this case." *Id.* at 406.

The government has filed petitions for certiorari with the Supreme Court in both *Jackson* (on September 9, 2026) and *In re Grand Jury Subpoenas* (on September 15, 2026) and obtained stays of the mandates from the respective Courts of Appeal. However, the Ninth Circuit specifically refused to restrict the precedential effect of *Jackson* on other cases. *See* Dkt. 63.1 in *United States v. Jackson*, No. 25-6214 (9th Cir. Aug. 21, 2026) (staying mandate but denying request seeking a "stay [of the] judgment and therefore the precedential effect of the panel decision"). Similarly, the Second Circuit refused to stay the disqualification of Sarcone. *See* Dkt. 104.1 in *In re Grand Jury Subpoenas*, No. 26-156 (2d Cir. Sept. 11, 2026) ("IT IS HEREBY ORDERED that the request to stay the Court's mandate is GRANTED, and the request to stay the district court's disqualification order is DENIED.").

**B. Procedural Background**

On August 21, 2026, shortly after *Jackson* was issued, Tran filed his motion seeking reconsideration of the July 2026 denial of his motion to dismiss and disqualify Essayli.[13] *See* ECF No. 60 in Case No. 8:25-cr-00250-JVS-1.

[13] Although Tran seeks "reconsideration," the parties agreed at the October 13, 2026 hearing that the court should consider that motion as a stand-alone "renewed" motion. Accordingly, the court does not apply traditional standards for reviewing a motion for reconsideration. In essence, the court is reviewing its own decision anew based on intervening binding precedent.

Meanwhile, the government filed a "Notice of New Authority" in cases in the Central District in which defendants had previously raised challenges to their indictments related to Essayli's role, citing *Jackson* and attempting to distinguish it. *See, e.g.*, ECF No. 62. On September 4, 2026, Ramirez followed with his renewed motion to dismiss and to disqualify. ECF No. 68. The renewed Motions were then assigned to this court because, by standing order, all Judges of the Central District have been recused from hearing motions concerning the disqualification of Essayli. ECF Nos. 70, 71.

On September 23, 2026, the government filed its combined opposition to the renewed Motions. ECF No. 74. In conjunction with its opposition, the government provided Order No. 7207-2026 issued by Attorney General Todd Blanche—also dated September 23, 2026—purporting to revise Essayli's appointment and designation as Special Attorney and FAUSA (the "revised designation order"). ECF No. 74-1.[14] That revised designation order is set forth

---

[14] Along with its opposition, the government also disclosed that Blanche had appointed Essayli as an Assistant United States Attorney ("AUSA") on July 29, 2026. ECF No. 74-2. That appointment states: "Pursuant to the authority vested in the Attorney General by 28 U.S.C. § 509, 510 and 542, I [Todd Blanche] appoint Bilal A. Essayli to be an Assistant United States Attorney for the Central District of California, as of July 26, 2026, and continue the designation of Mr. Essayli as First Assistant United States Attorney." *Id.* It then includes the same language from Bondi's order from a year earlier that appointed Essayli a Special Attorney and designated him as FAUSA (i.e., the *same* language that *Ramirez* found violated the FVRA): "As First Assistant United States Attorney, Mr. Essayli will have the authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of

(continued . . . )

and analyzed in the Discussion section to follow. On September 30, 2026, Ramirez filed his optional reply, ECF No. 75; Tran did not file a reply. The court heard argument on the renewed Motions on October 13, 2026.

## III. **DISCUSSION**

### A. The September 23, 2026 Revised Designation Order Was Ineffective; Under *Jackson*, Essayli Is Disqualified from These Prosecutions

The government acknowledges (as it must) that Bondi's July 29, 2025 appointment of Essayli as a Special Attorney and designation of him as the FAUSA for the Central District, ECF No. 74-3, is identical to Bondi's July 28, 2025 appointment of Chattah as a Special Attorney and designation of her as the FAUSA for the District of Nevada. Despite the identical designations, however, the government argues that *Jackson* does not control—at least prior to issuance of the revised designation order—because the "litigation posture" in the two cases is different. Indeed, it appears to be true that the district court in *Garcia* did not consider—as *Ramirez* did with Essayli—whether Chattah could supervise the prosecutions with powers delegated to her in her role as FAUSA, and thus the Ninth Circuit was not reviewing such a ruling. Nevertheless, as noted earlier, the

the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d." *Id.* That latter sentence clearly has no effect, given *Ramirez* (and as now confirmed by *Jackson*). At the October 13, 2026 hearing, the parties agreed that this appointment of Essayli as an AUSA prior to Blanche's revised designation order has no bearing on the issues in these renewed Motions.

Ninth Circuit was specifically presented with that argument in *Jackson* (with multiple citations to *Ramirez*). And *Jackson* squarely rejected that position.

It follows that, unless something materially changed with Essayli's designation, the court would disqualify Essayli from these cases (*Ramirez* and *Tran*) for the same reasons that *Jackson* affirmed the disqualification of Chattah. The result of these renewed Motions thus turns on the meaning and effect (if any) of the revised designation order. The government acknowledges that Attorney General Blanche issued the revised designation order in a prospective effort to change Essayli's designation to distinguish it from Chattah's improper designation analyzed in *Jackson*. The revised designation order provides in full:

> By virtue of the authority vested in me as the Attorney General by law, including 28 U.S.C. §§ 509, 510, 515, 542, and 543, I hereby approve the July 29, 2025 appointment of Bilal A. Essayli as a Special Attorney in the Central District of California, his July 26, 2026 appointment as an Assistant United States Attorney, and his July 29, 2025 designation as First Assistant United States Attorney for that District; and I hereby authorize him to exercise certain functions and duties of the office of United States Attorney and also of my own office. Such functions and duties include the authority to conduct and supervise any kind of legal proceeding within that District, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States Attorneys are authorized by law to conduct, but do not include any function or duty that by law may be performed only by a United States Attorney, and do not include certifications

> under 18 U.S.C.§ 3731, certifications under 18 U.S.C. § 5032, and applications under 26 U.S.C. § 6103(i)(l)(B).

ECF No. 74-1.

In its briefing, the government explains that this revised designation order was issued to:

> mak[e] clear that [Essayli] has been delegated some of the Attorney General's own independent powers to conduct and supervise litigation in the district and only "certain functions and duties" of the "vacant office" of the U.S. Attorney . . . not to include any nondelegable duties and specifically excluding the 'duties of the U.S. Attorney' that *Jackson* suggested may 'not be delegable . . . ."

ECF No. 74 at PageID#:753 (quoting *Jackson*, 187 F.4th at 1215).

But nothing in the revised designation order materially distinguishes it from the Chattah designation order deemed improper in *Jackson*. As explained in greater detail to follow, the order is functionally equivalent to Essayli's prior ineffective designation. There is still "no way to understand the delegation here as anything other than an attempt to assign [Essayli] all the functions and duties of the U.S. Attorney." *Jackson*, 187 F.4th at 1215. And even if it can be read to withhold a few powers that otherwise *could* have been delegated, the revised delegation order is still "so comprehensive that [Essayli] functionally occupies the vacant PAS office as the *de facto* acting officer." *In re Grand Jury Subpoenas*,

188 F.4th at 612–13. It would still amount to "precisely the kind of de facto appointment of an acting officer, premised on the Attorney General's 'general authority . . . to delegate duties,' that [the FVRA] prohibits." *Jackson*, 187 F.4th at 1215 (citations omitted).

### *1. The Revised Designation Order Is a "Boilerplate" Limitation*

To begin, the revised designation order is nothing more than a "boilerplate limitation" stating that Essayli is "not delegated any non-delegable powers," which *Jackson* suggests would be "an unsuccessful attempt to avoid running afoul of the FVRA." 187 F.4th at 1215 (quoting *Bullock*, 489 F. Supp. 3d at 1126) (brackets omitted). It authorizes Essayli "to exercise certain functions and duties of the office of United States Attorney and also of [Blanche's] own office . . . but does not include any function or duty that by law may be performed only by a United States Attorney." ECF No. 74-1. It is the same thing—just with more words—as telling Essayli that he is "not delegated any non-delegable powers." *Jackson*, 187 F.4th at 1215. Under *Jackson*, it runs "afoul of the FVRA." *Id.*; *see also Bullock*, 489 F. Supp. 3d at 1126 (rejecting a limitation stating the "delegation covers only those functions or duties that are not required by statute or regulation to be performed only by the Senate-confirmed official occupying the position"); *Widakuswara v. Lake*, 832 F. Supp. 3d 55, 66 (D.D.C. 2026) (determining that a

delegation of "nearly all statutory authorities . . . apart from the making of reports" was "an unlawful effort to transform Lake into the CEO . . . in all but name" in violation of the FVRA).

### *2. The Designations Are Functionally Identical*

In any event, even if *Jackson* did not specifically disapprove of a "boilerplate" limitation, the revised designation order is not meaningfully different from the July 2025 designation for a more fundamental reason. The prior designation order (whether Chattah's or Essayli's) could lawfully only have delegated powers that are delegable. It was overbroad in that it purported to delegate all the powers of a United States Attorney (even powers that could not be delegated). But *Jackson* did not find an FVRA violation because the designation was illegal or void for delegating powers that could not be delegated; it found a violation of the FVRA because the designation was so comprehensive that it was attempting to create a de facto United States Attorney. The revised designation order does the same thing: It simply states explicitly what was implicit in the prior designation. Like the prior version, Essayli's revised designation order excludes only powers that are necessarily excluded by law.

### 3. *The Powers That Were Held Back Are Not Delegable Regardless*

This conclusion remains true even though the revised designation order states that it holds back three specific functions or duties from Essayli's delegated powers. It specifically states that Essayli's delegated duties "do not include certifications under 18 U.S.C. § 3731, certifications under 18 U.S.C. § 5032, and applications under 26 U.S.C. § 6103(i)(1)(B)." ECF No. 74-1. The government acknowledges that the revised designation order excluded these specific powers because *Jackson* had identified them as examples of powers that were non-delegable and should not have been included in the prior unlimited delegation. *See* ECF No. 74 at PageID#:758. But, as explained to follow, these are powers that, by statute and case law, must be performed by a United States Attorney (or superior officials of the Department of Justice) anyway. Even if the government's opposition calls them "potentially nondelegable," *id.*, under case law, they are indeed non-delegable powers in the Ninth Circuit (as the government agreed at the October 13, 2026 hearing).[15]

[15] *Jackson* referred to those powers by saying "[a] few cases have concluded *or at least suggested* that certain duties of the U.S. Attorney are not delegable." 187 F.4th at 1215 (emphasis added). The government hangs on a thin reed if it is relying on the "or at least suggested" language for the proposition that those powers would have been delegable to Essayli here. In any event, this court would not hang its decision on that language; as analyzed to follow, it is bound by Ninth Circuit precedent holding that such powers could not be further delegated to a FAUSA under these circumstances.

Section 3731 requires a certification by "the United States attorney" that an interlocutory appeal of an order suppressing or excluding evidence "is not taken for purpose of delay" and that the evidence is material. 18 U.S.C. § 3731. Prior decisions of the Ninth Circuit "make clear that a § 3731 certification must be made personally by the United States Attorney." *United States v. Weyhrauch*, 544 F.3d 969, 972 (9th Cir. 2006) (citing *United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) (en banc) ("[A] certification by a United States Attorney (*personally, not by an Assistant United States Attorney*) that the appeal is not taken for the purpose of delay and that the evidence is substantial proof of a fact material in the proceeding is sufficient for purposes of establishing our jurisdiction under § 3731.")) (other citations omitted).[16] Moreover, *Weyhrauch* also specifically held

[16] *United States v. Wallace*, 213 F.3d 1216 (9th Cir. 2000), held that a § 3731 certification could be valid if the United States Attorney properly designated an AUSA to carry out his functions during his absence. *Id.* at 1218. *Wallace* based that conclusion on 28 C.F.R. § 0.131, which at the time provided:

> Each U.S. Attorney is authorized to designate any Assistant U.S. Attorney in his office to perform the functions and duties of the U.S. Attorney during his absence from office, or with respect to any matter from which he has recused himself, and to sign all necessary documents and papers, including indictments, as Acting U.S. Attorney while performing such functions and duties.

*Id.* (quoting § 0.131). Section 0.131 was redesignated as 28 C.F.R. § 0.136 in 2003.

But *Wallace* does not change this court's conclusion. The Attorney General, by rule, *removed* § 0.136 from the Code of Federal Regulations on October 14, 2016, precisely because it *conflicted* with the FVRA. *See* 81 Fed. Reg. at 72692–03 (Oct. 21, 2016). The change

(continued . . . )

that a Special Attorney appointed under 28 U.S.C. § 515(a) or 28 C.F.R. § 0.13(a) may not certify an appeal under § 3731. *Id.* at 974.

Similarly, 18 U.S.C. § 5032 (along with an implementing regulation, 28 C.F.R. § 0.57) requires written certification by only particular high-ranking Justice Department officials or United States Attorneys to authorize certain federal proceedings against juveniles. *United States v. Doe*, 98 F.3d 459 (9th Cir. 1996), held that a certification was invalid because AUSAs were not authorized under the statute or regulation, i.e., only United States Attorneys or certain other senior Justice Department officials could certify such proceedings.[17] *Id.* at 461.

Likewise, persuasive out-of-circuit decisions conclude that duties under 26 U.S.C. § 6103(i)(l)(B) must be performed by lawful United States Attorneys or other higher officials of the Department of Justice, i.e., the duties are

---

"amend[ed] the Department of Justice (DOJ) organization regulations to remove authority from United States Attorneys (USAs) to designate any Assistant United States Attorney as Acting United States Attorney." *Id.* at 72692. "The removal of authority from USAs [was] designed to bring DOJ's organizational regulations in compliance with the [FVRA]." *Id.* at 72693. It explained that "[c]urrently, 28 C.F.R. 0.136, which governs the designation of Acting USAs, is inconsistent with the [FVRA], insofar as it authorizes each USA to designate any AUSA in the office to perform the functions and duties of the USA office and use the title of Acting USA." *Id.* That change confirms that the function cannot be performed by a FAUSA.

[17] A subsequent case, *United States v. Juvenile Male (Kenneth C.)*, 241 F.3d 684 (9th Cir. 2001), distinguished *Doe*, and held that the United States Attorney's power under § 5032 could in turn be re-delegated to an AUSA. *Id.* at 687–688. But *Juvenile Male* does not control for the same reason that *Wallace* does not control as to certifications under § 3731, as analyzed in the previous footnote. *Juvenile Male* based its holding on 28 C.F.R § 0.131, which was removed (as § 0.136) in 2016 to comply with the FVRA.

not delegable to an AUSA or a Special Attorney.[18] *See United States v. Mangan*, 575 F.2d 32, 39 (2d Cir. 1978) ("The statute requires that an application for an order under the cited section, in the case of the Department of Justice, shall be made by the Attorney General, the Deputy Attorney General, or an Assistant Attorney General. When Congress chooses to speak with such specificity, courts must heed its language."); *In re Application for an Ex Parte Order to Authorize Disclosure of Tax Returns*, 2026 WL 63331, at *3 (N.D.N.Y. Jan. 8, 2026) (voiding certification of application under 6103(i)(1)(B) because the unlawfully serving FAUSA was not properly serving as Acting United States Attorney for the Northern District of New York). The district court in *In re Application for an Ex Parte Order* relied in large part upon *United States v. Giordano*, 416 U.S. 505 (1974), for the "straightforward principle" that "when Congress specifies which officials may exercise a particular statutory power, Congress intended that

---

[18] Section 6103(i)(1) provides in pertinent part:

> . . . .
> (B) Application for order.--The Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510 of title 28, United States Code, may authorize an application to a Federal district court judge or magistrate judge for the order referred to in subparagraph (A) [regarding disclosure of certain tax information in a criminal proceeding].

specification to be exclusive." 2026 WL 63331, at *3 (citing *Giordano*, 416 U.S. at 512–13). Indeed, *Giordano* rejected the argument that general delegation provisions such as 28 U.S.C. § 510 could supersede specific language in the statute at issue. *See* 416 U.S. at 514 ("Despite [§] 510, Congress does not always contemplate that the duties assigned to the Attorney General may be freely delegated.").

And so, withholding the three specific statutory powers mentioned in the revised designation order in reality withholds nothing—these powers could not have been delegated in the first instance. Effectively, the language excluding these functions is mere surplusage—the equivalent of a "boilerplate" delegation to Essayli of all the powers except those that cannot be delegated.

#### 4. *The Delegation of the Attorney General's Powers Does Not Save the Designation*

Finally, the court rejects the government's argument that Essayli's revised designation order is valid because the Attorney General was delegating his own powers, rather than the powers of the office of United States Attorney. *See* ECF No. 74 at PageID#:758 (government arguing that "there is no legal or logical basis to read § 3347 [of the FVRA] as barring the Attorney General's delegation of the functions and duties of *his own office* just because they overlap with the functions and duties of the vacant office of U.S. Attorney"). Here, the government

is referring to the clause in the revised designation order that states: "I hereby authorize [Essayli] to exercise certain functions and duties of the office of United States Attorney *and also of my own office*." *See* ECF No. 74-1 (emphasis added).

But there clearly is a basis (both legal and logical) to reject the Attorney General's delegation of his *own* powers. Again, as discussed in *Ramirez* and *Jackson*, the exclusivity provision of the FVRA bars "[a]ny statutory provision providing general authority to the head of an Executive agency [such as the Attorney General] . . . to delegate duties statutorily vested in that agency head" from being a means to temporarily authorize an acting official from performing a PAS office's functions and duties. 5 U.S.C. § 3347(b). Rather, §§ 3345 and 3346 of the FVRA are the "exclusive means" to do so, unless another statute "expressly" authorizes "the President, a court, or the head of an Executive department" to do so on a temporary basis. *Id.* § 3347(a)(1)(A).[19] Whether Essayli is designated the powers of the office of a United States Attorney, or of the Attorney General himself, that designation stems from a "statutory provision providing general authority" not a statute "expressly" authorizing such a temporary designation. *Id.* § 3347(b).

[19] Sections 3347(a)(1) and (a)(2) mention two other exceptions, which are not applicable.

Moreover, as already explained in detail, *Jackson rejected* the position that someone could perform those duties in a *different* role, such as the FAUSA, when they were in reality acting as a "de facto" United States Attorney. *See Jackson*, 187 F.4th at 1215 ("The Attorney General's unqualified delegation of all of the U.S. Attorney's functions and duties to [Chattah] is precisely the kind of de facto appointment of an acting officer, premised on the Attorney General's 'general authority . . . to delegate duties,' that section 3347(b) [of the FVRA] prohibits."). That logic applies even if the delegation is of some of the Attorney General's powers.

In sum, Essayli is unlawfully serving as a "de facto" United States Attorney, and is disqualified from participating in or supervising the prosecutions of Ramirez and Tran.[20]

**B. The Court Declines to Dismiss These Indictments**

Given the disqualifications, Defendants again seek dismissal of their indictments. Here, however, the court continues to follow *Ramirez*'s conclusion that the indictments should not be dismissed. As explained in detail in *Ramirez*, the FVRA's remedial provisions in 28 U.S.C. § 3348(d)(1) did not apply to nullify

[20] Because the court disqualifies Essayli from participating in these prosecutions, it need not reach the alternate argument that Essayli's service is in violation of the Appropriations Clause. *See* ECF No. 68 at PageID#:725 (recognizing that the Appropriations Clause argument is secondary).

the illegal actions of Essayli because the actions (obtaining indictments and supervising prosecutions) are delegable and thus are not subject to the "no force or effect" clause of the statute. *See* 807 F. Supp. 3d at 1106–1108 (applying *Gonzalez & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 107 F.4th 1064, 1074 (9th Cir. 2024)). That reasoning still applies.

Likewise, *Ramirez* reasoned that the indictments were otherwise valid because they were signed by AUSAs (not Essayli himself) in compliance with Federal Rules of Criminal Procedure 7(c)(1) and 1(b)(1)(B) and binding Ninth Circuit case law. *See* 807 F. Supp. 3d at 1109 (first citing Rules 7(c)(1), 1(b)(1)(B), and then *United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999)) (other citations omitted). The court also found no indication of a due process violation or misconduct before the grand jury, and no reason to authorize discovery into Essayli's particular involvement in these prosecutions. *Id.* at 1110; *see also Tran*, ECF No. 56 at PageID#:191 in Case 8:25-cr-00250 JVS (finding "nothing in [Tran's] motion [that] distinguishes Tran's case either legally or factually from *Ramirez*"). Nothing has changed to alter the court's view as to those factors.

And, as *Ramirez* summarized, the movants had not met the standards necessary to dismiss the indictments as a sanction under the court's supervisorial powers for prosecutorial misconduct under *United States v. Bundy*, 968 F.3d 1019

(9th Cir. 2020). *See* 807 F. Supp. 3d at 1111 (applying *Bundy*, 968 F.3d at 1030). *Bundy* reiterated that "[u]nder its supervisory powers, a district court may dismiss an indictment with prejudice for prosecutorial misconduct only if there is (1) flagrant misbehavior and (2) substantial prejudice.'" 968 F.3d at 1031 (quoting *United States v. Kearns*, 5 F.3d 1252, 1253 (9th Cir. 1993)).

At the first prong, the government was litigating a novel posture and *Ramirez* recognized that, at that point, no circuit court had decided whether a FAUSA appointed under Essayli's (and Chattah's) circumstances could serve in that capacity with fully delegated powers. *See* 807 F. Supp. 3d at 1112. Although we now have such recent circuit court opinions (*Jackson*, *In re Grand Jury Subpoenas*, and *Giraud*), the court remains of the view that "the proceedings have not reached a stage in this court where sanctions for egregious government conduct such as those imposed in *Bundy* are appropriate." 807 F. Supp. 3d at 1112.

Although, at prong one, circumstances may be moving closer towards "flagrant misbehavior," *Bundy* requires *both* prongs to be satisfied ("flagrant misbehavior" *and* "substantial prejudice"). 968 F.3d at 1031; *see also, e.g.*, *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (requiring substantial prejudice and that "no lesser remedial action [be] available" for dismissal) (quoting *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991)). And here,

even if the first prong would be satisfied, there still has been no showing of "substantial prejudice." In sum, the court denies the requests to dismiss these indictments.

## IV. <u>CONCLUSION</u>

The renewed Motions are GRANTED in PART. Bilal A. Essayli—even in his designated roles as a Special Attorney and FAUSA—is unlawfully serving as a "de facto" United States Attorney, and he is disqualified from (1) participating in or supervising these cases, or (2) otherwise supervising any attorneys in the handling of these cases. The court, however, DENIES the requests to dismiss Defendants' indictments.

In an October 19, 2026 Stipulation amongst all parties, *see* ECF No. 81, which the court will accept by separate order, the United States indicated (as it did at the October 13, 2026 hearing) that it would appeal from any order disqualifying Essayli and file a motion for stay pending appeal. *See* ECF No. 81 at PageID#:998. Accordingly, the parties agreed to a briefing schedule for such a motion to stay, should the court issue a disqualification order. Those briefing deadlines now apply. *See id.* Also as stipulated, the disqualifications in this Order do not become effective until the court rules on the government's motion for a stay pending appeal. *See id.* And as stipulated, if the court denies the government's

motion for a stay pending appeal, this order will take effect one week after the court's denial, subject to any further orders of this court or an appellate court.

IT IS SO ORDERED.

DATED: October 27, 2026.

/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge